(153 App. Div. 526.)

## In re KUTCOSKY et al.

(Supreme Court, Appellate Division, Third Department.   November 13, 1912.)

1. EXECUTION (§ 418*)—SUPPLEMENTARY PROCEEDINGS—CONTEMPT.

    In proceedings supplementary to execution, evidence *held* not to sustain a finding of the County Court that the defendant husband received and disbursed money in violation of a restraining order.

    [Ed. Note.—For other cases, see Execution, Cent. Dig. § 1201; Dec. Dig. § 418.*]

2. EXECUTION (§ 419*)—SUPPLEMENTARY PROCEEDINGS—COSTS—REASONABLENESS.

    In an order adjudging judgment debtors owing $77.12 to be guilty of contempt for receiving and disbursing money in violation of a restraining order, allowances and costs of $30 attorney's fees, $20 referee's fees for two days, $10 to the stenographer two days, $5 to the stenographer for preparing papers on the application, $5 to the stenographer for transcript of minutes, $2 as the expense of serving papers, and $10 for the attorney upon the application, were excessive and unreasonable.

    [Ed. Note.—For other cases, see Execution, Cent. Dig. §§ 1202, 1204; Dec. Dig. § 419.*]

3. EXECUTION (§ 367*)—SUPPLEMENTARY PROCEEDINGS—PROPERTY WHICH MAY BE REACHED.

    Under proceedings supplementary to execution, served December 31st, money then partly earned within the month of December, and paid to the judgment debtors on January 15th, could not be reached.

    [Ed. Note.—For other cases, see Execution, Cent. Dig. § 1104; Dec. Dig. § 367.*]

Appeal from Clinton County Court.

In the matter of the examination of John Kutcosky and Mary Kutcosky, judgment debtors, in proceedings supplementary to execution, upon the application of Libbie Feinberg, judgment creditor, upon the judgment entitled: "Justice Court, Town of Dannemora.   Libbie Feinberg, Plaintiff, v. John Kutcosky, Defendant."   From a judgment of the County Court, made July 17, 1911, adjudging them guilty of contempt, and committing them for six months or until they should fully pay $77.12, with $82 costs and expenses of the proceeding, amounting in all to $159.12, defendants appeal.   Order reversed on the law and facts.

See, also, 147 App. Div. 393, 132 N. Y. Supp. 9.

Argued before SMITH, P. J., and KELLOGG, BETTS, HOUGHTON, and LYNCH, JJ.

Arthur S. Hogue, of Plattsburgh, for appellants.

PER CURIAM.   This order arose in the same supplemental proceedings in which we reversed an order in contempt proceedings in 147 App. Div. 393, 132 N. Y. Supp. 9.

[1] The defendants are ignorant Polanders, without property.   The defendant Mary rents a house for $3 per month and keeps several boarders.   The boarders lodge upstairs in a common room.   She and her family lodge in the rooms below, she apparently doing all the work.   The boarders were under contract to pay $16 a month, paya-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

ble on the 15th day of each month. The supplementary order was served December 31st. The husband is a hard-working man. He pays his earnings to his wife. From money paid to her by her husband and the boarders, January 15th, she paid the butcher and storekeeper who furnished supplies for herself and family. It does not appear that the defendants were informed that there was a restraining order in the papers which were served on them, and it does not appear that the order was read to them. On the return day of the original order the defendant John appeared, traveling 37 miles from his residence to the place where it was returnable. His wife was at home with her youngest child, who was but a few weeks old. The plaintiff's husband, who is a Jew, and who speaks and understands the Polish language indifferently, acted as interpreter on the examination when John was sworn. On the adjourned day, when Mary appeared, another interpreter served. On the first examination it appears, from the translation by the interpreter, that John swore that he was running the boarding house, and that he received the money from the boarders and paid it out. On the second examination John swears that he was not correctly interpreted, that he swore to nothing of the kind, and that he did not receive or pay out any of the money from the boarders, and had nothing to do with the boarders; that the alleged interpreter did not correctly report his answers, and threatened to imprison him unless he signed some papers which were produced, and which were not explained or understood by him. The interest of the alleged interpreter is so great that, when the defendant denies the correctness of the interpretation, the court, in a proceeding like this, will not place great reliance upon the interpretation. The order against John is therefore contrary to the evidence.

[2] The order allows $30 attorney's fees in supplementary proceedings, $20 referee's fees for two days, $10 to the stenographer two days, $5 to the stenographer for preparing papers upon the application, $5 to the stenographer for transcript of minutes, $2 as the expense of serving papers, and $10 for the attorney upon the application. The evidence upon the first day is printed in the record by question and answer, and is found in 29 folios. The second day's examination, by question and answer, occupies 71 folios. The costs and allowances are excessive and unreasonable. There is nothing to indicate that either of the defendants knew they were restrained from receiving or paying out money.

[3] The defendant Mary, who received and paid out the money, did it openly, apparently thinking she had the right so to do, and her right so to, do is sustained by authority. Kroner v. Reilly, 49 App. Div. 41, 63 N. Y. Supp. 527; First National Bank of Auburn v. Beardsley, 8 Wkly. Dig. 7 (1st Dept.). The moneys paid to the butcher and the storekeeper were entirely the proceeds of the work of Mary during the preceding 30 days, and the supplies furnished by those tradesmen. The moneys apparently went to the parties having the most equitable claim to them. The plaintiff's right to reach those moneys is at least so questionable that it should not be enforced in contempt proceedings.

The finding that the defendants received and disbursed the money in violation of the order served is not sustained by the evidence. The order is oppressive, and the proceedings have been oppressive and unreasonably burdensome. The order should therefore be reversed upon the law and the facts, with costs.

Order reversed upon the law and facts, with $10 costs and disbursements. All concur.